# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jane Turner,                                                  Civil No. 13-376 (DWF/TNL)

          Plaintiff,

v.                                                             **MEMORANDUM**
                                                         **OPINION AND ORDER**

United States Department of Justice;
Eric Holder, Attorney General; and
James M. Cole, Deputy Attorney General,

          Defendants.

---

Clayton D. Halunen, Esq., and Susan M. Coler, Esq., Halunen & Associates; and David K. Colapinto, Esq., and Stephen M. Kohn, Esq., Kohn Kohn & Colapinto, counsel for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, United States Attorney's Office; and Steven Y. Bressler, Esq., United States Department of Justice, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss for lack of subject matter jurisdiction brought by the United States Department of Justice ("DOJ"); Eric Holder, Attorney General; and James M. Cole, Deputy Attorney General (collectively, "Defendants"). (Doc. No. 31.) The Court grants the motion for the reasons set forth below.

## BACKGROUND

Plaintiff Jane Turner ("Turner") worked as a Special Agent with the Federal Bureau of Investigation ("FBI") between 1978 and 2003, when she alleges that she was forced to resign as a result of her actions as a whistleblower. (Doc. No. 12, First Amended Compl. ("FAC") ¶¶ 8-9, 50-52.) Turner's whistleblowing actions related to an incident in 2002 when Turner reported to her supervisor and others that another FBI agent had removed a Tiffany crystal globe paperweight (the "Globe") from the 9/11-crime scene and had gifted it to a FBI secretary. (*Id.* ¶¶ 19-20.) Turner alleges that she was particularly concerned with the Globe incident because it affected an ongoing criminal case against a defendant who was being prosecuted for similarly removing a New York City Fire Department truck door from the 9/11-crime scene. (*Id.* ¶¶ 18, 21-22.)

Turner reported the Globe incident to the DOJ Office of Inspector General ("OIG") on September 11-12, 2002. (*Id.* ¶¶ 23-24.) OIG then conducted a major investigation involving the interview of fifty-five people and review of the conduct of several FBI offices. (*Id.* ¶ 25.) The investigation resulted in a number of findings of theft relating to the 9/11-crime scene, including theft by supervisors and at least one Assistant Director. (*Id.* ¶¶ 34-36.) Turner alleges that two Senators sent a letter to the FBI Director seeking his "personal and explicit assurance that no retaliation take place against Special Agent Jane Turner." (*Id.* ¶ 26.)

Turner alleges that she was then subjected to retaliation in a number of forms. For example, Turner alleges that on September 27, 2002, the Minneapolis Division of the FBI

decided to "pull the trigger" and fire her because she "doesn't play well with others." (*Id.* ¶ 27.)  Turner asserts that in October 2002, her supervisor called FBI headquarters and informed them that he would be recommending that Turner be fired.  (*Id.* ¶ 28.)  Turner further alleges that she subsequently received a negative performance evaluation; was informed that she would be fired; was subjected to a "toxic" work environment; was called derogatory names; was avoided by her colleagues; was removed from all substantive assignments; and was subjected to other forms of a hostile work environment. (*Id.* ¶¶ 29, 31, 37, 39, 40-43.)  Ultimately, Turner was given a Notice of Proposed Removal.  (*Id.* ¶ 44.)  Turner alleges that because she understood she was going to be fired, would not be able to return to her career, and had vested in her retirement annuity, she "retired" on October 21, 2003 as a result of constructive discharge.  (*Id.* ¶¶ 50-52.)

Turner alleges the following with respect to the process associated with her whistleblowing action:  (1) she filed her complaint with OIG in 2002 in accordance with the requirement that she request an investigation of alleged reprisal with either OIG or the DOJ Office of Professional Responsibility ("OPR") (*id*. ¶ 60); (2) after 120 days, she requested a hearing before the DOJ Office of Attorney Recruitment and Management ("OARM") in accordance with the requirement that OIG has 120 days to investigate, and, if it does not complete its investigation, a party can seek a hearing (*id.* ¶¶ 56-57, 61-62); (3) she participated in OARM's administrative process over the course of seven years (*id.* ¶ 63); (4) upon receipt of OARM's ruling finding Turner had been subjected to illegal reprisal and ordering relief, the FBI appealed OARM's ruling to the Deputy Attorney General ("DAG") and Turner then cross-appealed (*id.* ¶¶ 58, 68-70); and (5) in January

3

2013, DAG issued a final order ("DAG Final Order") affirming in part and reversing in part OARM's ruling (*id*. ¶¶ 75-77). DAG's determination affirmed OARM's findings on liability and retaliation, but reversed the findings relating to entitlement to back pay. (*Id*. ¶¶ 76-77.) Turner asserts that the DAG Final Order constitutes a "final agency action" under relevant statutes and regulations. (*Id*. ¶ 75.)

Turner's complaint seeks injunctive relief and judicial review of DAG's final determination denying her back pay and corresponding benefits on the following grounds: (1) DAG's Final Order Was Arbitrary, Capricious, an Abuse of Discretion, Not Supported by Substantial Evidence and Otherwise not Issued in Accordance with the Law; and (2) OARM's Final Corrective Action Order Was Supported by Substantial Evidence and Should be Affirmed. (*Id*. ¶¶ 80-93.) Turner's claims are brought "under the FBI Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2303, . . . DOJ[] regulations implementing the WPA, 28 C.F.R. Part 27, and the Administrative Procedure Act, 5 U.S.C. 701 *et seq*. ["APA."]" (*Id*. ¶ 8.)

Defendants now move to dismiss the action on the grounds that the APA does not vest the Court with jurisdiction over federal personnel actions and that the action is barred by collateral estoppel. (Doc. Nos. 31, 32.)

## DISCUSSION

### I. Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of proving jurisdiction.

4

*V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id.* (citation omitted). In a factual challenge to jurisdiction, the court may consider matters outside the pleadings, and the non-moving party does not benefit from the safeguards of Rule 12(b)(6). *Id.* at 728-30 n.4 (citations omitted) (holding that on a Rule 12(b)(1) motion challenging subject-matter jurisdiction, the court "has authority to consider matters outside the pleadings").

**II.    Collateral Estoppel**

Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal citation and quotation omitted). To show that collateral estoppel applies, the following elements must be met:  (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;

5

(2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *See Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) (citation omitted). Collateral estoppel applies to issues of jurisdiction. *See Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Homestake Mining Co.*, 722 F.2d 1407, 1411 (8th Cir. 1983) ("Dismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim.") (citation omitted).

      Here, Defendants base their claim for collateral estoppel on *Roberts v. U.S. Dep't of Justice*, 366 F. Supp. 2d 13 (D.D.C. 2005). In that case, three plaintiffs, including Turner, sued the DOJ for failure to process their whistleblower reprisal complaints in compliance with the Civil Service Reform Act (the "CSRA"), and sought injunctive relief under the APA. *Id.* at 15. In *Roberts*, the court outlined the facts as alleged by plaintiffs as follows. Turner had initiated a whistleblower proceeding with the DOJ in February 2001, which was not investigated for a year. *Id.* at 17. Turner then informed OPR that she wished to withdraw her 2001 complaint without prejudice. *Id.* In October 2002, Turner refiled her whistleblower claims with OPR. *Id.* In June 2003, OPR informed two FBI officials that Turner's allegations were without merit, refused to reopen Turner's proceedings, and published a report to the FBI with those determinations. *Id.* The court in *Roberts* first examined the defendants' argument that "the APA provides no basis for

6

this court to assert subject matter jurisdiction over the plaintiffs' [injunctive claims] because the . . . CSRA[] bars judicial review of claims within the purview of the CSRA." *Id.* at 18. On that issue, the court ultimately held that "plaintiffs' allegations of CSRA violations do not fall within this court's subject matter jurisdiction" and dismissed plaintiffs' injunctive claims under the APA. *Id*. at 22, 28.

Defendants argue that, based on *Roberts*, the issue of whether Turner can bring suit for her whistleblower claims under the APA has been "actually litigated and resolved in a valid court determination essential to the prior judgment." *See Taylor*, 553 U.S. at 892. That is, Defendants maintain that the court in *Roberts* already determined that Turner could not bring her FBI whistleblower claims because federal courts lack jurisdiction over FBI whistleblower cases like Turner's (i.e. an APA claim for alleged violations of Section 2303), and that now the exact same issue is before this Court. Defendants thus contend that collateral estoppel should apply and Turner's claims must be dismissed.

Plaintiff counters that Defendants' arguments with respect to collateral estoppel are "baldly misleading, misplaced, and completely without merit." (Doc. No. 36.) Specifically, Turner argues that the issue of whether she can bring her current FBI whistleblower claims was not actually litigated because: (1) *Roberts* did not specifically address, "directly or indirectly, the WPA's 1989 amendment adding § 1221 to the WPA or those provisions related to a private right of action and judicial review [for § 2303]"; (2) *Roberts* only concerned alleged misconduct by the DOJ in the investigatory phase of plaintiffs' whistleblower claims, not issues with a final ruling; (3) the *Roberts* plaintiffs

7

never exhausted their administrative remedies, thereby precluding any type of final ruling that is required for judicial review; and (4) *Roberts* did not concern the specific question of the right to a hearing appealing the final denial of a claim as is now sought by Turner.

The heart of the parties' dispute lies with the second and fifth collateral estoppel factors—whether "the issue sought to be precluded [was] the same as the issue involved in the prior action," and whether "the determination in the prior action was essential to the prior judgment." *See Robinette*, 476 F.3d at 589. In this case, to determine whether the issue now before the court is the same as the issue that was before the *Roberts* court, the Court must first analyze the relevant CSRA and WPA provisions.[1]

The CSRA was enacted in 1978 to comprehensively overhaul the civil service system and to create a new framework for evaluating adverse personnel actions against federal employees. *See McGrath v. Mukasey*, Civ. No. 07-11058, 2008 WL 1781243, at *3 (S.D.N.Y. Apr. 18, 2008) (citing *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773-74 (1985)). The CSRA was codified throughout Title 5. *See generally* U.S.C. Title 5. The CSRA constitutes a comprehensive scheme covering federal employees; the CSRA itself provides the exclusive remedies for government employment disputes. *See* 5 U.S.C. § 2302 (enumerating prohibited personal practices for all federal employees);

---

[1] "[J]urisdiction over APA challenges to federal agency action is vested in district courts *unless* a preclusion of review statute specifically bars judicial review in the district court." *Roberts*, 366 F. Supp. 2d at 18 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979)) (emphasis in original); *see also Ochoa v. Holder*, 604 F.3d 546, 549 (8th Cir. 2010) (explaining the role of the APA with respect to federal jurisdiction). Thus, here, the question is whether the CSRA, as it applies to FBI employees, and in light of the WPA, specifically bars judicial review and thereby bars the Court's jurisdiction of Turner's APA claims.

*see also Gergick v. Austin*, 997 F.2d 1237, 1239 (8th Cir. 1993) ("An exclusive remedial regime such as the CSRA may neither be supplemented nor replaced by other remedies."); *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2134 (2013) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court [beyond the CSRA]."); *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) ("[R]emedial provisions are exclusive, and may not be supplemented by the recognition of additional rights to judicial review having their sources outside the CSRA."); *id*. at 67 ("[T]he failure to include any relief within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available.") (citation and quotation marks omitted).

The WPA was enacted in 1989 "to amend title 5, United States Code, to strengthen the protections available to Federal employees against prohibited personnel practices, and for other purposes." Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16. The WPA included 5 U.S.C. § 1221, which added an individual right of action in certain reprisal cases described in § 2302. *See* 5 U.S.C. § 1221 ("An employee [or] former employee . . . may obtain judicial review [in whistleblower suits.]"). Thus, the WPA amended the CSRA in certain respects, and Section 1221 provides rights to judicial review for certain federal employees in certain circumstances. *See McGrath*, 2008 WL 1781243, at *3.

Although Section 2302 addresses all prohibited personnel practices for federal employees, it also carves out certain categories of employees as exceptions to the procedures relating to personnel practices described in § 2302; FBI employees are one such exception. 5 U.S.C. § 2302(a)(2)(C)(ii)(I) ("For the purpose of this section . . . 'agency' . . . does not include . . . the Federal Bureau of Investigation[.]"); *Roberts*, 366 F. Supp. 2d at 19 ("Although most excepted service employees are eligible to invoke the above-described procedures relating to prohibited personnel practices, the CSRA expressly provides that FBI excepted service employees do not have this right.") (citing 5 U.S.C. § 2302(a)(2)(C)(ii)). Instead, the rights of FBI employees with respect to prohibited personnel practices are specifically addressed under Section 2303. Section 2303 provides in its entirety:

> (a)  Any employee of the Federal Bureau of Investigation who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority, take or fail to take a personnel action with respect to any employee of the Bureau as a reprisal for a disclosure of information by the employee to the Attorney General (or an employee designated by the Attorney General for such purpose) which the employee or applicant reasonably believes evidences—
>
> > (1)  a violation of any law, rule, or regulation, or
> >
> > (2)  mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.
>
> For the purpose of this subsection, "personnel action" means any action described in clauses (i) through (x) of section 2302(a)(2)(A) of this title with respect to an employee in, or applicant for, a position in the Bureau (other than a position of a confidential, policy-determining, policymaking, or policy-advocating character).

10

> (b) The Attorney General shall prescribe regulations to ensure that such a personnel action shall not be taken against an employee of the Bureau as a reprisal for any disclosure of information described in subsection (a) of this section.
>
> (c) The President shall provide for the enforcement of this section in a manner consistent with applicable provisions of sections 1214 and 1221 of this title.

*Id*.

In examining the above statutes and associated DOJ rules,[2] courts have concluded that decisions about FBI personnel issues, including whistleblower issues, are precluded from judicial review, and instead must proceed through the DOJ-established systems. *See, e.g.*, *McGrath*, 2008 WL 1781243, at *3 (stating that "the regulations promulgated by the Attorney General comply with section 2303(c)'s directive by establishing remedial procedures that parallel the procedures set forth in section 1214 and 1221, but which are internal to the DOJ," and "[t]he legislative history of section 2303 confirms that Congress expected the President to implement section 2303(c) by working through the DOJ"); *see also Runkle v. Gonzales*, 391 F. Supp. 2d 210, 232 (D.D.C. 2005) ("Investigation of [FBI employee] reprisal allegations, however, and any necessary corrective action is not subject to the OSC and MSPB procedures outlined in §§ 1214 and 1221, but instead is covered by DOJ-issued regulations.") (citation and footnote omitted); *Roberts*, 366 F. Supp. 2d at 20 (citing to language in DOJ rules that indicate the preclusion of judicial review for FBI employees bringing whistleblower suits).

---

[2] *See* 28 C.F.R. § 27.

As it relates to issues in this case, the court in *Roberts* examined the plaintiffs', including Turner's, APA claims, and specifically considered whether the District Court for the District of Columbia could assert subject matter jurisdiction over plaintiffs' injunctive claims under the APA in light of the CSRA's bar of "judicial review of claims within the purview of the CSRA." *Roberts*, 366 F. Supp. 2d at 17-18.  The court specifically analyzed the CSRA, including those provisions applying only to FBI employees who serve in an "excepted service" capacity, and who therefore do not have the right to invoke the general CSRA procedures relating to "prohibited personal practices," such as whistleblower reprisal.  *Id*. at 19 (citing 5 U.S.C. § 2302(a)(2)(C)(ii)). The court stated that FBI agents are provided "limited and specific protection" in scenarios of employment-based reprisals for whistleblowing.  *Id*. (citing § 2303(a)). With respect to FBI employees, the court further explained:

> As members of the excepted service, however, FBI employees may not employ the remedial scheme available to most other federal employees. That Congress deliberately excluded FBI employees from the provisions establishing administrative and judicial review for personnel actions involving violations of CSRA implementing regulations suggests that Congress meant to *preclude* judicial review for such actions.

*Id.* (citation omitted) (emphasis in original).  Finally, based on the entirety of its analysis of the CSRA, the court stated that:

> The plaintiffs here are asking this court to do what Congress and many courts have said it cannot do:  fashion a judicial remedy outside the ambit of a statute—the CSRA—that was and is intended to be the exclusive remedy for federal employees alleged to have been aggrieved by actions related to their employment.

*Id*. at 21-22.  The court finally held that, "plaintiffs' allegations of CSRA violations do not fall within this court's subject matter jurisdiction" and dismissed plaintiffs' injunctive claims under the APA.  *Id*. at 22, 28.

Based on the above, it is clear that Plaintiff's articulation of the issue before the Court is too narrow and that the question addressed by *Roberts*—whether federal courts have subject matter jurisdiction for FBI whistleblower claims brought under the APA—fully encompasses all issues now before this Court.

The court in *Roberts* determined that the CSRA is an exclusive scheme and also specifically considered Section 2303 as the applicable section for FBI employees.  Because the court's analysis and holdings in *Roberts* addressed all whistleblowing claims for FBI employees, contrary to Turner's assertions, the court in *Roberts* did not need to specifically address the issues now raised by Turner in order to have fully determined that claims like Plaintiff's current whistleblower claim cannot be heard by this Court.  As Defendants argue in their reply brief, "[t]he court's analysis did not focus on any single statutory provision of the CSRA but, rather, found that current and former FBI employees like plaintiff cannot bring *any* APA claim for violation of § 2303, . . . or indeed, concerning any "prohibited personnel practice" under the CSRA."  (Doc. No. 40 at 5.)  Put another way, the specific facts underlying Turner's claim here, the existence of Section 1221, and the stage of Turner's proceedings in this case, do not change the fact that the court in *Roberts* determined that the CSRA completely bars judicial review for FBI employees pursuing personnel actions under the APA.  In sum, the court in *Roberts*

concluded that the CSRA bars judicial review of *any* APA FBI personnel claims, and this is one such claim.

Plaintiff's argument that the explicit language of Section 2303(c) compels application of Section 1221 judicial review rights does not save Plaintiff's claim. Section 2303(c) provides: "The President shall provide for the enforcement of this section in a manner consistent with application of provisions of Sections 1213 and 1221 of this title." 5 U.S.C. § 2303(c). However, "consistent with" does not mean "equal to." The plain language of the statute, as well as the caselaw, supports the view that Congress intended to develop a system that proceeds entirely internal to the DOJ with respect to FBI employees. *See McGrath*, 2008 WL 1781243, at *3. The DOJ-established system must provide processes and rights to FBI employees that are consistent with Section 1221, but the system is not explicitly required to provide for judicial review.

Thus, the Court concludes that the issue of whether the APA provides subject matter jurisdiction for a federal court to consider an APA claim for an alleged violation of an FBI employee's rights under the CSRA, as amended by the WPA, is the real issue before the Court now, and that issue was fully addressed and ruled on by the *Roberts* court. The fourth collateral estoppel factor has been met, and the issue sought to be precluded is the same as the issue involved in the prior action.

The Court further concludes that "the determination in the prior action [was] essential to the prior judgment." *See Taylor*, 553 U.S. at 892. Plaintiffs argue that the conclusions of the court in *Roberts* regarding the exclusivity of the CSRA, and the court's lack of subject matter jurisdiction were merely dicta. The Court disagrees. The

claims were definitively dismissed "in their entirety for lack of subject matter jurisdiction." *Roberts*, 366 F. Supp. 2d at 28.  That dismissal was based on the Court's explicit finding that "the plaintiffs' allegation of CSRA violations do not fall within this court's subject matter jurisdiction," and therefore, such a decision was essential to the *Roberts* court's judgment, in accordance with the fifth collateral estoppel factor.

In sum, the Court finds that the factors for determining collateral estoppel have been met.  First, "the party sought to be precluded in the second suit [was] a party . . . to the original lawsuit"—here Defendants seek to preclude Turner from this suit, and Turner was a party to the original lawsuit.  Second, the issue of whether the APA provides subject matter jurisdiction for a federal court to consider an APA claim for an alleged violation of an FBI employee's rights under the CSRA, as amended by the WPA, is the issue before this Court and was before the court in *Roberts*, as explained above.  Third, that issue was litigated and determined by the court in *Roberts*, and that court entered a valid and final judgment on that issue when it dismissed the plaintiffs' FBI whistleblower claims in their entirety for lack of subject matter jurisdiction due to the exclusivity of the CSRA.  Finally, the court's determination in *Roberts* that it has no subject matter jurisdiction over any CSRA claims for FBI employees was essential to its dismissal of those claims.  Thus, collateral estoppel applies in this case,[3] Defendants' motion to

---

[3]   It further appears that on the record before the Court, even in the absence of collateral estoppel, the Court would have reached the same decision on the merits, particularly based on the Court's analysis of Section 2303 above.

dismiss for lack of subject matter jurisdiction is granted, and Turner's APA claims are dismissed with prejudice.

### ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. [31]) is **GRANTED**.

2. Counts I and II are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 29, 2014            s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge